The case is 23-10697, United States of America v. Karl Patrick Kluge. If I'm mispronouncing that, please tell me. And, Mr. Cummings, when you are ready, you may proceed to the podium, and I see you've reserved time for rebuttal. Yes, Your Honor. You may proceed. Good morning, Your Honors and Counsel, and may it please the Court. This morning, I plan to focus just on the first two issues in the brief regarding the Guidelines Commentary and the Constitutional Restitution Issue, recognizing the circuit precedent controls the third and fourth issues. The restitution order violated Mr. Kluge's right to a jury trial under the Fifth and Sixth Amendments because the District Court increased the mandatory minimum based on facts found by the District Court rather than the jury, and the District Court erred by deferring to the Sentencing Guidelines Commentary to determine the number of images involved in the offense. Turning to focus more on the Sixth Amendment restitution issue at this moment, this Court and the Supreme Court have long recognized in the consistent line of authority that restitution is a part of the criminal penalty imposed at the conclusion of a criminal proceeding and part of the sentence. And from Alain versus the United States through Erlinger, the Supreme Court has held that any fact that increases the mandatory minimum other than the fact of a prior conviction must be alleged in the indictment. That seems to run headlong, though, into at least Gatlin and arguably in Droman, but at least in Gatlin, we relied on the Seventh Circuit's analysis that, quote, the scope of apprendi only comes into consideration if we conclude restitution as a criminal penalty. We declined to reach such a conclusion. I read that reference to the Seventh Circuit's opinion in Wolfe. I wasn't sure if that was part of the holding because I'm not sure if that was necessary to the holding. It's, it's, it, it, how is it not necessary? If, in other words, there's any number of ways to write an opinion. If, if the question before the Court is, does this violate apprendi, we could say this doesn't violate apprendi for this narrow reason, or we can say apprendi doesn't apply to restitution. And we've seemed to have done that twice. And so I'll back up and so let's assume it was part of the holding. Okay. I think that's, and I think that's a fair way to read it. I would respectfully say there, one, there is a distinction between mandatory minimum restitution under 2259 versus restitution. I know, but if, if the rule of apprendi doesn't apply, you're certainly right. I mean, there's, there's maximums and there's minimums and apprendi, the rule of apprendi applies to both of those things. But if, if it's not a criminal penalty and apprendi doesn't apply, then it really doesn't matter if we're talking about maximums and minimums, does it? I would, then, I think that if, if Gatlin was saying that restitution is not a criminal penalty, I think it would. I, I'm not, I just read to you what it said. I'm not telling you what it said. I'm reading to you what it said. It would run headlong into earlier precedents from Kelly v. Robertson, Satterfield, Hairston, Johnson, and the earlier case rule would have to govern. Well, wouldn't, don't, but those are not apprendi issues. Those are not, those are not issues dealing with apprendi. Those are issues where we've said criminal, it's a criminal penalty in the context in which it was brought up. But if in the context of apprendi, it is not a criminal issue, then how would we read them as being in conflict? Well, I think that even though those earlier decisions were not in the specific context of apprendi, the holding that restitution is a criminal penalty, that maintains its status as a holding. But as you know, a holding can't reach beyond the facts of the case, and the facts of the case didn't call into question apprendi or the Sixth Amendment, but we're in the context of something very different than that. How could it be a holding that for Sixth Amendment purposes, something is or is not a criminal penalty? Well, suppose that. And Dorman, which I read to be exactly the same, I can read to you the quote from that, but it's as broad, that apprendi does not apply to a restitution order, predates even the cases that you've said, I believe, almost all of them, maybe not all of them, but just about all of them. And I think that... You're about to say that's true, right? Well, saying that apprendi to, as Your Honor mentioned, you can't reach beyond the facts of the case. You can, but again, you can have a holding, you can have a really broad holding, a really narrow holding, but you can't reach beyond the facts of it. If the facts are whether apprendi applies, and we hold very broadly that apprendi doesn't apply in this context to restitution, not apprendi doesn't apply to the maximum because there isn't a maximum, but apprendi doesn't apply, that's a broad holding. I understood Dorman to say that apprendi did not apply to restitution under 3663 because there was no maximum penalty. That's one reason we gave. But if you — what we said — first of all, so we had the sentence, apprendi does not apply to restitution order. We then go through a bunch of cases from other circuits, and then we say that we essentially agree with the reasoning given by these other circuits. And one of those circuits was the Seventh Circuit, which said in an earlier case exactly what we then reiterated in Gatlin, which was — You're referring to Dorman, yes. That's right. The Seventh Circuit. So if those are the reasons in which we're saying it, it wasn't just having to do with the maximum, it had to do with that also, which makes sense given how broad we wrote the holding. I didn't understand Dorman's reference to that aspect of the Dorman opinion. But we specifically — But we took the time to then quote each of the prior cases. I mean, what we said was — I'm not saying it's how we should do things, but we list a bunch of cases, one from the Eighth, one from the Third, one from the Seventh, and one from the Tenth, one from the Sixth. We say then, say at the end, we agree with the holdings of our sister circuits, we've just said what the holdings are, and adopt their reasoning in holding that apprendi does not apply to a restitution order. And one of those was Berman, which gave two reasons, one of which was that restitution is a civil, not criminal one. I just — I'm not sure how to read it otherwise. Even if I agreed with you, and I actually am somewhat sympathetic to the argument you're making, I just don't know how we get around those cases. I think, again, one way to get around them is part of the rationale — okay, we'll go to the reasoning of the cases and rejecting apprendi's applicability to restitution under 3663. It depends on the notion that restitution under those statutes is more purely compensatory. Can we talk about the image — And then it breaks down when you go over to 2259, where it's got less of a compensatory nature due to the fact that it imposes a mandatory minimum of $3,000. No matter the — I'll get to the termination of liability provision in a second. Well, let's get to the — I want to get to the image issue, because you're getting out of time, and that, frankly, is, I think, what's driving this bus right now. So, what is the difference, in your mind, between a video — and let's take, you know, some of us who are dinosaurs here are reel-to-reel movies — between that and a book compendium of pictures? What is the difference, in your mind, between those two things? Well, a book, for example, it's pages, each constituent part. You could flip to — Right. At will, you could go, I want to go to page 38. I want to go to page 47. And isolate that, look at that at will. You could tear it out, copy it on a copier. Versus in a reel-to-reel example, each constituent moment slips by in 1 24th of a second. Right. Its constituent components are nothing like pages in a book. Each flies by in the — Can I ask something? So, why is that? In other words, so in the old days, you know, there'd be books where you would flip through the pages and you actually could see, kind of like you could in an old reel-to-reel movie, the motion going forward. In other words, isn't a movie really just a book compendium that's just sped up really fast so it creates motion? In other words, an image is still. It always is still. There is no such thing as a moving image. That's nonsense, right? It doesn't — a single representation doesn't move. But what gives the appearance of movement is just when you speed them up when you put them in front of somebody, right? So that's an accurate technical description of how a video is made. It is in a technical sense. It's just images.  And it's just — it's — and in the old days at Disney, you could go and look and you would actually hand crank and you could watch videos that way. And you could even buy one. You can even buy a still. Some people have like a signed one by Walt Disney and have the actual frame from a movie hung up there from a particular — But they're one image over another. Right. In a strict technical sense, that's correct. Right. That's what a movie — But we're not also asked to interpret image in a vacuum sense. We have to understand what it means in the context of this image table, which — Well, we've just explained to you that in the context of a video, it's really, in fact, a series of images. So here's — I'll give you another example. Suppose those old books that you bought where you could flip through each picture, cartoon, and it goes, no one bought those or came in for each individual — each individual page of the cartoon. You bought it for the whole — I know. But it's not an intent — it's not an intent test. In other words, it's not — the answer is not how did you intend to look at it. It is how many images there are. It's a simple — it's a volume question, not a — and a user — it's not a user question. Right? Part of the context in which we have to interpret image, right, Kaiser says you look to text history — Structure, right. — purpose, of course, all those things. It's been well laid out in the Phillips majority why a frame-to-frame approach would collapse the image table. Why is the Third Circuit and Judge Larson not absolutely right? I mean, Judge Larson just, like, eviscerates the majority in that, especially in the argument that a scene is somehow an image. How is she not completely right? So we get a frame. So in this image, it's based on what the viewer perceives and receives. But an image, a picture, for example, has different attributes from a frame in a video. A picture is received as an item. A person can go to it and view it at will. But that's — that's true. And the eye perceives only one — But that's — that's not true. I mean, you can pause a specific part in a movie and even isolate those, and some are — some of the images are just printed out. In other words, there's very few just raw pictures anymore, right? Everyone is just isolating parts from a video and printing those out as the still. I just don't see how that same logic doesn't apply to video frames. And that's — and even when you're — since you said you could rewind in a video, you can rewind and you can actually see — when you're rewinding, you can actually see the different frames. That is not — that would require much more — a different approach and much different work from, say, owning or possessing different pictures where one could go to each one at will or duplicate it, share it, frame it. Whereas what the videos exist in the context of is they're threaded and woven together where each one slips by in a tiny fraction of a second. And the human eye is not perceiving it that way as multiple different frames. So that's — How's that — how's that — I think that — that can't be right. In other words, the only way to get movement is by doing that. In other words, the only reason you're watching the video is because each frame is individually different and just being watched to sped up. If it wasn't that way, then you would just see a really choppy video. You know, it's like when you slow down your — you know, you can slow down on YouTube. If you slow it down, you can see it being really slow and choppy and stopping, going. It's only because you perceive all the images together in a quick basis that you're able to do so, right? In a technical sense, I just — the way these are actually consumed and the way they are possessed is as a single — One — There could be more than one image in a video. I'll concede that. I'm not saying it's a one-to-one every — But why — why are we looking at it from the consumer perspective? There's — what in the statute is driving you to argue we need to look at it from that perspective rather than the fact that the statute simply says images. We have a video that is comprised of multiple images. Why aren't we just counting those images? So I would agree. You count images. What we would say is an image is a depiction of child sexual exploitation. Now, I — so I'm going to weigh in there. If it's okay if I can ask a question.  I actually think you have a point here. Do you agree that if we read images the same way that Judge Larson did and the Third Circuit did — so just assume that world for the moment — that this record on itself has more than 600 images? Oh, if you took the Judge Larson approach? Yes. If I agree with Judge Larson and the Third Circuit, do you — is the record I have before me enough to say that there is more than 600? I don't know the second by — the second-to-second count. I have not viewed any of them. I understand. I can't give you an answer. The answer is probably. Would you want a remand so that the district court can sit and watch the videos and then make that call? I'm telling you in the world that I just described, do you really want to send this back to a district court so that the district court can sit there and watch the videos and count 24 frames per second in order to make that call? Do you want that to happen? I will answer no, Your Honor, and my time is up. But I need — this is important, I'm sorry. Then I need you to concede that if we do adopt that view, that there is more than 600 right here. If you concede that, then I will accept that concession. I think based on the paragraph — one of the paragraphs of the PSR describing one of the videos, that would likely be correct, Your Honor, to be honest. And I appreciate that. Thank you. Ms. Sweeney? Good morning, Your Honor. This is counsel. May it please the court. Sarah Sweeney on behalf of the United States. So to start where you stopped with my colleague, I think the question left is, does the commission's interpretation of image, is it reasonable? Does it fall within — No, that's not — I know that's what the government wants us to argue, but you've heard a lot of questions from this panel, and so I really hope that you start with, that whether this is ambiguous or not. Do you think — tell me what you — the government believes is wrong with Judge Larson's view and the view of the Third Circuit here. Your Honor — And are you arguing to us really that you want us to say that this is ambiguous? Your Honor, the word images in the guideline, yes, we think it is ambiguous, because it does not explain how to decide what an image is in the context of — No, no guideline. No word tells you how to apply it. It is its own existence. In other words, that's not how words work. There's no mechanics for how to apply something. That has to be done on a case-by-case basis. Words exist with objective meaning, and you apply them to a factual situation. That's what courts do. Your Honor, kind of the other side of what Your Honors were talking about in terms of like flip books or things like that is videos nowadays also often have much more than 24 frames per second. And — And what Judge Larson says in her concurring opinion is, in that case, the government actually had an expert who was ready to come testify and say, in that case, it was 24. It was the standard. I've done a little poking around myself just because this is an area I'm not familiar with. It turns out it's sort of standard digital. Your camera defaults to 24 per and has sort of kept this standard. I don't see why anyone can't just say that this was recorded on an iPhone and the iPhone standard is that, and under a preponderance standard, that's enough. That is not a huge burden to do. And by the way, as we just discussed with your opposing counsel, they don't want a district judge to sit there and to look at each of these images to have to make that call. They don't want that for obvious reasons. So they're going to stipulate to that anyway. It's going to take care of itself. But I don't see why that's a good reason to read it in an incorrect way. So let me answer one question you asked at the end, Your Honor, just in terms of the record and what I think it shows here about the videos. Sure. In the PSR, there are three different videos. So I've thought about that. You're right. And I've actually noodled with this a little bit, and I agree with you. But the problem is, and your opposing counsel points this out, and he makes a good point in his brief. Not every scene, if we really are going to break it down by frame, some frames start off somewhere else and then get to the main part and then some trail off at the end. Some may have, like, a quick, you know, up at the ceiling. In other words, not every frame may have in it child pornography. And it's not just image. It's image of child pornography. And so someone actually does have to sit there and look at a 24-frame, if you did it per second on a 24-frame per second, whether every second has child pornography in it in order to make that call. And so without that stipulation, if we did adopt the Third Circuit's and Judge Larson's concurring opinion as our view, then I think we would have to send it back, and I think somebody would have to look at this and make a finding of fact regarding it. Do you understand that point? Yes, Your Honor, I do. I just don't see how we can take the PSI as just enough that every frame in there has that, even if you're right that clearly those things were contained within the video. And I'm totally understanding that point, Your Honor. I'll just also point to at the restitution hearing, there were longer videos introduced, including some that were above five minutes. I thought about that, too. And the problem with that is that post-states by a few months, the sentencing hearing. In other words, if they were rolled in together, that might make sense to me, that you could probably use the evidence as both. But I don't see how you could use that for a sentence that was already imposed, use evidence there to then go back. And I do also understand that, you know, but just wanted to point out those factual issues in the record. But just one more comment on ambiguity here. Ambiguity means that something is susceptible to more than one meaning. And I think that there are a range of possibilities. Can I just interrupt you? That's not what it means. It isn't. I think people can, part of our confusion in our law is exactly that confusion. Ambiguity is after resolution of all tools in our toolbox in interpreting language that we are unable to come to a best reading of what something is where there is two possible susceptible meanings. And that there are, in fact, two best readings in which we then have to decide which one within the zone ambiguity is right or not. That is what, if you take seriously what the Supreme Court is telling us in Kaiser and Dupree, despite my best efforts, what the court is saying, then I think that's how you have to read ambiguity. It's not just it could be read two ways. It's that taking everything together, purpose, history, text, all of it, structure, that it means that. So if you use those tools, tell me how this is ambiguous. But I'm failing to see it. And, Your Honor, I'm sorry. I should have included the word reasonable, obviously. Like two or more reasonable interpretations. But also ambiguity doesn't mean just because two parties have a different interpretation of language doesn't also make it ambiguous. I completely agree, Your Honor, because I think some of the proposals for what the rules should be here are not reasonable. I think that every court that's looked at it has said that one image equals one video is not reasonable. But I think there are reasonable interpretations here. And I think that I read Kaiser to say that something is not ambiguous if there was only one reasonable construction of language. But after doing all of those things, in other words, you can't just say because they say this and we say this and they both sort of seem reasonable, that's enough. It's that you have to apply all of these things before you can even reach that conclusion. So I just, you can't divorce it from that. And so to offer, when thinking about this, what another reasonable way to look at this could be is that rather than looking at every frame, you might imagine a world where you look at every second of a video. You might imagine that contains child pornography. Explain to me how that's consistent with image. If image is a single word... One definition that you all agree on, all the case law agrees on, it is a singular representation, either analog or digital. That is the definition that I've seen universally cited. How is one second of video singular representation? It's not. It is by definition more than one frame, more than one image. So it can't be that. How's that reasonable? Your Honor, I understand your point, and I think I will move on to the rest of the... Can I ask you one question, still staying on this? I understand, and I can sort of see your reaction to what we're talking about, that there is going to be potentially a sea change for the Department of Justice going forward in these cases if we were to rule in the way that we are suggesting and say this is not ambiguous. And so I understand your resisting that, but I keep going back to what Judge Luck's question is. How is the term image ambiguous? Not can you figure out a way to make this easier for expert witnesses. So if you could just... Are you arguing more for, okay, we want this policy to go forward to make it easier, or are you legitimately saying that the word image is ambiguous? Your Honor, our position is that legitimately under Kaiser the word image is ambiguous because there is more than one reasonable interpretation of it. I understand this court does not agree with our proposals of other reasonable interpretations of the word. All right. So just that was our position. I don't think that changes anything from your perspective. Can I ask something? So Judge Branch mentioned something that's interesting in her question, and I want to address it. To your knowledge, has the Third Circuit, and there are three states including some big ones in the Third Circuit, has DOJ, the Department of Justice, fallen apart and all trial prosecutions come to a halt because somehow the court has determined images to be singular frames as opposed to the interpretation you propose? Your Honor, I don't know for sure, but I can't imagine that it has. Right. Justice still goes on, does it not?  Right. Yes, indeed. I totally agree with that. Right. Yes, sir. Okay, so moving on to restitution, our position here is that both criteria still exist here. Dorman's rejection of Apprendi applying to restitution. Can I ask the question this way? Assume for the moment Dorman and Gatlin do not exist, and we have no law on this point. How is your opposing counsel wrong? So starting from the Dorman perspective, our position, like this is not a traditional minimum mandatory or a minimum mandatory in a way that would counsel the application of Apprendi in a lien. Doesn't there need to be facts found? In other words, at the very least, I'm not sure I agree with everything your opposing counsel says, but certainly the number of victims has to be a found fact if there's more than one. I assume the charge itself inheres to there's at least one victim. So if it was just one, I think you might be right that it flows directly from the charge and the guilty plea. But if it's two or three or four and there's a mandatory minimum for each, doesn't there need to be a fact finding by somebody of the number of victims? So jumping, I think that question, if I understand it correctly, goes more to the purpose argument here. And our purpose argument here is that the restitution focuses on the victim, not on the defendant. And as a result of that, because that purpose is so distinct, it doesn't fit within the context of a punitive action. But sentencing has a victim-oriented aspect to it. I mean, victims have significant rights at sentencing hearings. One of the 355-3A factors is effect on the community. I mean, often at sentencing a judge will say, you know, the victim impact here is significant. They're required to hear victim impact statements. How is sentencing not itself victim-oriented, at least to a certain degree? It has punitive and retributive aspects to it, but it also has restorative and victim aspects to it. Absolutely, Your Honor. But in terms of the actual award of restitution, our position is that the purpose of it is not a punishment to the defendant. It is related to a criminal process. And that's what many of the cases that my colleague cites. I know, but where you're taking money, I mean, I'm having trouble seeing where the purpose dictates this. Where you are taking money from one person's pocket and putting it in another at force of government order, and in some cases while they're in jail, literally taking money from them while they're in jail, how is that not similar to fines and similar to other aspects of conditions that are imposed for supervised release, which clearly are sentencing? I'm sorry.  The way, kind of the unifying line that I can see through those cases is that they are focused on ways in which defendants are punished more because their conduct is viewed as more culpable under some criteria. With the restitution issues with victims, there is no requirement that the defendant's conduct be more culpable or less culpable or any of that. Yeah, but they wouldn't be there if they weren't culpable. In other words, the only way you get restitution is if it flows directly from guilt. So, I mean, there has to be some element of culpability involved. Absolutely. But once that bare element of culpability is found, then you turn to things like how many counseling sessions has this victim needed or will be needed. Well, not for minimum. I agree with you as to the somewhere in the range, but not for the minimum. And so, Your Honor, that's the dormant point I wanted to make, is that we don't consider this to be a minimum mandatory in the traditional sense or in a sense that would invite a lien into the equation here. And that's because the $3,000 is an apportionment. And then once a victim collects all of what they're owed, that obligation is terminated. So this is not a minimum mandatory. Because the issue here is that, unfortunately, some of these victims are re-victimized in the Rose series, the Maria series. And once they reach a certain level, I mean, their images are still out there, but they're not going to be able to get any more restitution. Your Honor, realistically, I agree with you. There are huge losses and huge harms here to victims that may never be satisfied. These victims may never be made whole. But in terms of legally, is this a minimum mandatory in terms of, must the defendant pay this $3,000? The answer under the statute is no, because there is a path by which the obligation can be terminated. But it is a judgment that's entered against them. I understand that at the end of the day they may not have to pay, but there is a judgment entered against them. There is a mandatory amount that's done. And at least while that's hanging over the person at the time it's imposed, how is that not consistent with a fine, which also, frankly, has bare minimum of culpability and may have a minimum associated with it with regard to certain charges? I just, I'm a hard, tabula rosa, I'm having a hard time understanding how restitution is so far and away different that the Sixth Amendment just simply doesn't apply. I don't know if I agree, Your Honor, exactly that fines are not, that they don't look at culpability in a different way. Some don't. Assume a minimum and assume that it's one of those where you can't waive and it flows directly from conviction. And there's a minimum mandatory. And there's a minimum mandatory. So you're convicted of possession of intent to distribute cocaine, $5,000 minimum cannot be waived. Just assume that. That flows directly from conviction. Minimum amount of culpability automatically has to apply. Well, Your Honor, I mean, in that situation, a lien would directly apply. I think here you still do have, and I'm sorry, I see I'm over my time, but I'll, thank you. You still do have to look to what the purpose of this is, which can only be a focus on victims, not on any culpability of the defendant. Thank you, Your Honor. Thank you. All right, Mr. Cummings, you have three minutes left. Thank you, Your Honor. I'll go back into the restitution issue directly. We're talking about mandatory minimums, and it is a mandatory minimum even with the termination of liability provision in the same way. For example, you have a safety vow as a relief vow from mandatory minimums. The existence of a safety vow doesn't make a mandatory minimum not a mandatory minimum. You have provisions to reduce a sentence post-judgment under Section 3582C. The fact that you can reduce the sentence later doesn't make a mandatory minimum not a mandatory minimum under all other statutes. So it is indeed a mandatory minimum, notwithstanding the termination of liability provision that exists. But I know, respecting, Your Honor, what you've said about Dorman and Gatlin, they will, I will say, at least assume for the sake of argument, as Your Honor said, they hold that restitution is not a criminal penalty. They held that within the context of not in a sweeping sense, but in the context of Sections 3663 and 3663A. And that is meaningfully different because those statutes have neither a maximum nor a mandatory minimum. And, in fact, the amount of restitution then can be fine-tuned just to compensate the victim. You're certainly right that we would have to extend them to the statute. But the holding, if the holding is that it's not criminal, then I don't see why that wouldn't apply to this being not criminal. That's the part that I'm at the connection. Everything you said is 100 percent right, but I don't see why that piece of it wouldn't apply directly to what we have here. Your Honor mentioned that the holdings, they have to be confined to their context. They are. In other words, the reason we're having this discussion is because there would have to be an extension to this new statute. So, yes. But if the holding, if the reasoning, which we are bound by, the necessary reasoning of a holding, is that it's not criminal, that would apply both for the maximum parts in those cases and to the minimum parts, would it not? Your Honor, it would be an extension. And 2259 carries criminal consequences. You can be imprisoned, re-imprisoned if you fail to pay restitution. 2259 restitution is enforceable in the same manner as a fine. When you follow, there's a string of statutory cross-references, but at the end of it, 2259 restitution is enforceable as a fine. And because paying restitution is also a mandatory condition of supervised release, if one fails to pay, you can also have supervised release revoked and sent back to prison. So it is a criminal punishment. It is enforceable through imprisonment. So that's a significant aspect of this. But I would just like to circle back to one issue. We know we have to take an ordinary language approach to frames. The ordinary human being walking around doesn't see a 25-second clip and say, I just saw 600 images. And Congress chose 600 as the top number to say, boy, you are the worst, the most prolific high-volume collector of child porn. It's not even worth distinguishing beyond that point. We know they didn't mean frames. I see my time is up. Thank you, Your Honors. Thank you both. We have your case under advisement. Thank you.